## WILLIAM WRIGHT *vs.* VERMONT & MASSACHUSETTS RAILROAD CORPORATION.

At the first meeting of the stockholders of a railroad corporation, November 21, 1844, it was voted "that all subscribers be allowed interest on all sums paid by them up to the time when the road shall be completed and put in operation." *Held,* that by this vote interest was not payable until the road was completed.

In July, 1847, the directors, under a special authority from the stockholders to arrange a system for the payment of interest, directed that interest should be paid on the original subscriptions, all of which were then paid in, up to September 1, 1847, which was paid accordingly. In October, 1847, the road being still unfinished, 8,000 new shares were created, to be paid for in instalments, "the old and the new to be of equal rank and value when fully paid, and the interest to be reckoned and adjusted accordingly thereon, and on every assessment that may be paid in accordingly." In September, 1848, 12,000 shares of additional stock were issued, payable in instalments, "interest to be allowed on the sums paid thereon, and on the full stock, when the whole shall be paid in, until the whole road shall be completed." The plaintiff took and paid for 200 shares of this last issue, according to the terms of the subscription therefor; and the plaintiff also owned 100 shares of the original stock, from October 1, 1848, until after April 15, 1849, at which time the road was not completed. In October, 1848, the directors voted, "that the interest due to October 1, 1848, on stock, be allowed to those who take new stock, and deducted upon the payment of the second instalment, or paid in a bond of the company, at ninety per cent., to any stockholder willing to take it;" but there was no provision for the payment of such interest in money. Interest was paid to Oct. 1, 1848, on the first two issues of shares, either in cash or by credit in payment for shares of the third issue. In April, 1849, the directors voted that interest on all shares should cease after the fifteenth of that month, although the road was not then in operation, and the treasurer computed the interest from October 1, 1848, to that date, on all the stock, including the plaintiff's; but the directors did not vote that such interest should be paid. In July, 1849, the plaintiff brought an action for interest on his 300 shares, from October 1, 1848, to April 15, 1849. *Held,* the action could not be maintained.

THIS action of assumpsit, brought July 3, 1849, to recover $975, with interest from April 15, 1849, was submitted to the court of common pleas on the following facts:

The defendants were incorporated March 15, 1844, with a capital of 25,000 shares, of one hundred dollars each. At the first meeting of the corporators and subscribers of stock, November 21, 1844, it was voted, "that all subscribers be allowed interest on all sums paid by them up to the time

when the road shall be completed and put in operation." At a meeting of the stockholders, February 12, 1845, it was voted, " That the directors be authorized to deviate so far from the vote passed at the stockholders' meeting in November last, on the subject of allowance of interest to stockholders, as to arrange a convenient system for the treasurer, by which payments shall be made in uniform sums, and interest be allowed from uniform dates, not earlier than the first day of March next."

The number of shares first issued was ten thousand, which were subscribed for and taken, January, 1845, and the first assessment thereon, of ten dollars a share, was made payable on the first of March, 1845. On July 6th, 1847, the directors voted " that interest be paid to all holders of full paid stock on the first day of September next, on the first day of October next." Interest was paid on the whole subscription of ten thousand shares, which had been fully paid in.

On the 14th October, 1847, the road not being completed, the directors " voted to create and issue eight thousand new shares, of one hundred dollars each, at $75 per share, to be paid for in instalments ; " " the old and new stock to be of equal rank and value when fully paid, and the interest to be reckoned and adjusted accordingly thereon, and on every assessment that may be paid accordingly." The above vote of the directors was authorized by the stockholders, by votes passed at meetings held on the 10th of February, and on the 28th of September, 1847, which votes may be referred to. On September 5th, 1848, the road still remaining unfinished, the directors voted to create and issue twelve thousand shares of one hundred dollars each, at fifty dollars per share, and sent out a circular of the same date, signed by John Rogers, treasurer. Under this vote and circular, the following terms of subscription were issued, by the board of directors, upon which the additional stock was subscribed for, to wit : " Vermont & Massachusetts Railroad Company. New stock issued September, 1848. Whereas the directors of this company, in pursuance of authority given them, have voted to issue 12,000 shares of new stock. at fifty dollars a share, to be first

offered to the present stockholders in the proportion of two new shares for every three now held by them, provided that, on or before the 16th day of October next, they pay to the treasurer ten dollars a share, and give him their promissory notes for ten dollars a share, payable December 15, 1848, fifteen dollars a share, payable February 15, 1849, and fifteen dollars a share, payable April 15, 1849, or to pay in the whole sum at one time. We, therefore, the undersigned, in consideration that the directors have offered to us all the shares that shall not be taken up and settled for by the stockholders, do hereby agree to take the same to the extent of the number set against our names, or our ratable proportion thereof, and to settle for the same as aforesaid on or before the 25th of October next, interest to be allowed on the sums paid, and on the full stock ($100 a share) when the whole shall be paid in, until the whole road shall be completed. Boston, September 8th, 1848. N. B. It is understood that the subscriptions made in this book are not binding until the shares herein subscribed, and those taken by the stockholders, shall amount at least to ten thousand. The directors do hereby assent to the above terms, and do agree as soon as practicable to distribute ratably among the subscribers hereto the shares that shall not be taken by the stockholders. A. Crocker, per order of the board." Said Crocker was president of the corporation.

It was further agreed that the plaintiff subscribed to the foregoing paper for 200 shares; that the same were duly distributed to him and became his property, and are still held by him; that the shares taken by the stockholders, and subscribed for under the foregoing terms, did amount to ten thousand ; that the terms of subscription were in all respects complied with ; that the plaintiff, before said 25th of October, did settle for all his shares on the terms of said subscription, and did pay for the shares so subscribed for, in full, and did in all respects, on his part, comply with and perform all the terms and conditions of said subscription, and within the time specified therefor; and the whole stock so subscribed for and taken was paid in within the time specified.

It was also agreed that the plaintiff, in addition to the 200 shares above mentioned, was the *bonâ fide* holder and owner of 100 shares of the capital stock of the defendant corporation, which had been fully paid for, and all the conditions to be performed on the part of the holder thereof had been performed, and that the plaintiff did so hold and own said shares from the 1st of October, 1848, to and after the 15th of April, 1849.

On the 12th of October, 1848, the directors voted, " That the interest due to October 1st on stock be allowed to those who take new stock, and deducted on the payment of the second instalment, or paid in a bond of the company, at ninety per cent., to any stockholder who is willing to take it. No bond to be issued for a less sum than $100." On November 3d, 1848, the stockholders voted " to recommend to the directors to extend the time for subscribing to the new shares, authorized by the directors September 5th, 1848, to December 1st, 1848, allowing the dividends of interest on the old stock, now credited, in payment of the second instalment." By order of the directors, interest on all shares of capital stock which had been issued prior to September 5, 1848, and paid for, was made up to October 1, 1848, and paid to the holders of such shares in cash, or by credit in payment for new stock.

On April 10, 1849, the directors voted, " That interest on the shares of this corporation shall cease after the 15th of the present month." The amount of interest from October 1, 1848, to April 15, 1849, on the shares held by the plaintiff and other stockholders, was cast up by the treasurer of the defendant corporation soon after the passage of the vote of April 10, 1849, and entered in a book procured by him for the purpose, setting against the name of each stockholder the number of his shares in one column, and the interest thereon in another. The entry to the plaintiff is as follows : " Names, Wm. Wright; No. shares, 300; amount, $975."

At the head of the first page of this book is the following heading for signature of the stockholders, on the right-hand column: " We the undersigned hereby acknowledge the receipt from the treasurer of the Vermont & Massachusetts

Railroad Company of the sum set against our names, the same being in full for interest due to April 15th, 1849, on the shares held by us in the corporate stock of said company." No signature appears in the column under this receipt; but it is agreed that in two instances, and in only two, the amount of interest, thus cast and set down in said book, has been allowed by the treasurer to subscribers, in part payment of instalments due on their shares, but only upon and in consequence of their refusal to pay such instalments unless such interest was so allowed and deducted; and these allowances were made by the treasurer without any vote of the directors, but was not dissented from by the directors when made known to them. There are, also, in the margin of said book, noted by the treasurer, transfers and orders to pay to other persons than those named in the book; all of which entries in said book may be referred to by either party.

No vote other than those contained in the foregoing statement has been passed by the directors or stockholders, relating to interest on shares, or the payment of such interest to shareholders. The interest on the plaintiff's shares from October 1, 1848, to April 15, 1849, which amounts to $975, has not been paid to him, and he has duly demanded the same. Before and up to April 15, 1849, the defendants' road was not completed.

Judgment being rendered for the defendants upon the foregoing statement, July term, 1851, the plaintiff appealed to this court.

*B. F. Hallett*, for the plaintiff. 1. The plaintiff, on demand, was entitled to receive his interest on his shares, by the terms of the subscription, and by the votes and acts of the corporation. 2. There were three issues of stock, at $100, $75, and $50, all coming under the same obligations and liabilities, as to payment of interest, to the holders ; and the contract and promise between and to the parties was, that the stockholder who performed his conditions should receive his interest from uniform dates. 3. The corporate vote of November 21, 1844, was a promise to pay interest on the stock, until the railroad should be completed. The vote of February 12, 1845, did

not affect this promise; it only authorized a convenient system to be arranged by the treasurer, so as to allow the interest on uniform sums from uniform dates. 4. The interest was paid on all the stock on the 1st of October, 1847, up to which date it was cast and paid to all who held stock on the 1st of September, 1847. This consummated the agreement and liability, as to interest, on the first issue of 10,000 shares. 5. The second issue of 8,000 shares, October 14, 1847, was made of equal rank and value with the old stock, and alike bearing interest. 6. September 5, 1848, 12,000 new shares were issued, on terms offering, as an inducement to subscribers, the payment of interest on the full stock until the road should be completed. Under this subscription the plaintiff took 200 shares, and he held 100 shares of the previous stock, with all the conditions performed as to both. This entitled him to claim his interest whenever ascertained, and especially whenever it should be cast up and credited to him by the treasurer.

7. October 12, 1848, interest due to October 1, 1848, was allowed to those taking the new stock, and deducted from the payment of their second instalment; and this included the 100 shares of old stock which the plaintiff held October 1, 1848. And interest on all shares, issued prior to the September stock, was made up and paid to the shareholders. 8. April 10, 1849, the directors voted that interest should cease on all shares after the 15th of April, 1849. Admitting they had power so to stop the interest, this vote was a pledge or promise, under the former votes and acts, to pay interest up to that time. And the treasurer cast the interest accordingly, from the former payment, October 1, 1848, and entered the same to the plaintiff's credit. 9. In two instances, this interest so cast was paid; and there is no vote or act of the corporation or directors affecting the right of plaintiff to his interest, on demand, up to April 15, 1849, the road being then not completed. 10. The foregoing votes and acts bind the corporation and entitle the plaintiff to recover his interest, in an action of assumpsit. Ang. & Ames on Corp. §§ 390–394; *Wright* v. *Lanckton*, 19 Pick. 288; *Foster* v. *Essex Bank*, 17

Mass. 503; *Hayward* v. *The Pilgrim Society*, 21 Pick. 270.
11. No vote to pay the interest before or after it was made
up, was necessary. The corporation was bound to pay by
the terms of subscription, and by implication from their votes
and acts. *Proprietors of Canal Bridge* v. *Gordon*, 1 Pick
297; *Smith* v. *First Congregational Meeting-House*, 8 Pick. 178.
12. The consideration necessary to sustain a promise to pay
the interest on these shares is raised by inference of law from
the subscriptions, and the votes and acts of the corporation
and its officers. *Spear* v. *Crawford*, 14 Wend. 20; Ang. &
Ames on Corp. §§ 517, 523, and cases cited. 13. The direc-
tors had no power to exonerate the corporation from their
liability to pay this interest; nor did they attempt to do it.
Ang. & Ames on Corp. § 520; *Sagory* v. *Dubois*, 3 Sandf.
Ch. R. 466. 14. The plaintiff, as purchaser of the 100 shares
of old stock, was substituted as to all the rights of the orig-
inal subscribers. Ang. & Ames on Corp. §§ 534, 553, 554.
15. The corporation, under the agreement of subscription,
held the interest for each subscriber, and were bound to pay
it; and the right to claim the interest was a right appertain-
ing to each share, as resulting from the agreement of subscrip-
tion. Ang. & Ames on Corp. § 557. 16. The acts of the
officers allowing and casting the interest were within their
authority, and bind the corporation; and the payment of the
interest in October, 1846 and 1848, and after April 15, 1849
in part, was adopted and ratified by the corporation. Ang.
& Ames on Corp. §§ 311, 231; *Thayer* v. *Boston*, 19 Pick
516; *Hayden* v. *Middlesex Turnpike Corporation*, 10 Mass
397.

*E. Buttrick*, for the defendants. 1. By the vote of the
stockholders, passed November 21, 1844, the shareholders
were to be allowed interest on the money paid for their
shares, until the road should be completed and put in opera-
tion. 2. But, by the terms of this vote, no time short of the
completion of the road was fixed for paying the interest; and
of course it did not become due or payable till the road was
finished. 3. The case finds that the road was not finished
on April 15, 1849. 4. By the vote of the stockholders, passed

on February 12, 1845, the directors were authorized to determine at what times and in what sums interest should be paid to stockholders; so that no interest would become payable to the shareholders until the road was completed, unless the directors should otherwise order. 5. The directors have not ordered the interest now sued for to be paid; *ergo,* this action cannot be maintained. 6. The vote of the directors passed April 10, 1849, declaring that interest on shares should cease after April 15, 1849, is void, being a direct and palpable violation of the rights of the stockholders.

SHAW, C. J. This is an action brought by the plaintiff as a stockholder in the Vermont and Massachusetts Railroad Corporation, to recover several sums alleged to be due and payable to him from the corporation. The case comes before us upon an agreed statement of facts, and the claim is placed by the plaintiff on the votes of the stockholders.

Supposing the original vote of the stockholders should be regarded as declaring a general right of the stockholders, previously to paying in any instalments on their shares, that each should be entitled to interest, to be computed on his payments, from the time of each payment to the time when the railroad should go into operation, and be in a condition to earn income and pay dividends, this would be equitable, because it would put stockholders on an equal footing, whether they should pay earlier or later. It would encourage capitalists to advance their money early, to meet the exigences of the company before it could enjoy any income; and it seems right that the use of such capital should be paid for as a common charge on all. But a general declaration, and the adoption of an equitable arrangement, was indefinite in its nature, fixed no time, or mode, in which such interest should be paid, and looked to no contingency on which it should be paid other than the completion of the road.

Subsequently the directors passed a vote fixing the time of the first computation of interest to September 1, 1847, probably with the expectation of issuing new stock, and providing that these sums of interest should be received in payment therefor. Afterwards, the directors, under the same authority, fixed

another time to which interest should be computed, (October 1, 1848,) being thirteen months from the former payment of interest, to be paid by being received on instalments on new stock, or the bonds of the company at ninety per cent., at the option of the stockholders. But there was no provision for the payment in money. These were paid accordingly. The directors never fixed any time for the third payment of interest. The directors voted, April 10, 1849, that no interest should accrue or be payable after April 15, and thus fixed, as far as they had authority to do it, the time to stop the running or accruing of interest; but they did not fix a time for the payment of interest, or direct the manner; whether by cash, bond, scrip, or otherwise. Taking the legal obligation of the company to pay interest, on the ground on which the plaintiff places it, interest was not payable annually, or at any other period; because the votes did not so provide. We think there was no implied promise to pay interest annually, even if such promise might be implied from undertaking to pay money at a distant day, with interest in the mean time, because, here was no debt, no principal sum, to be paid. The directors have put no practical construction upon the votes, by paying annually, because the first and second payments were not at an interval of a year, but of thirteen months; and besides, the last payment was not to be made in money. Further; if anything made it an annual payment of interest, this action, commenced July 3, 1849, was premature, being within a year from the former time of payment. In any way in which we can consider it, the plaintiff had no cause of action when the suit was brought.

The book made up by the treasurer, stating how much would be due to each on the 15th of April, on which some reliance was placed, does not appear to have been made in pursuance of any order of either stockholders or directors. It was a blank book prepared by the clerk, to be signed by the stockholders, if any vote should pass under which they should receive their pay. No such vote ever did pass. It is of no authority as evidence. Whether the plaintiff might or not maintain an action to recover this claim when the road should

be completed and put in operation, we do not perceive how he could do it before that time, without some vote of the corporation fixing the time of payment, and making it payable in money. Great stress was laid by the plaintiff on the vote of the directors of April 10, 1849, stopping all interest after April 15, though it was denied on the other side that the directors had any authority to pass such a vote. No doubt this time (15th of April, 1849) was fixed as the time for stopping the payment of interest to stockholders, because that was the time fixed for payment of the last instalment on the third issue of stock. As no more advances could be made, it was probably considered that, whether every stockholder should receive interest on what he had paid, or no one should receive any, it would really make no difference, because each would be bound to pay in the same proportion in which he would be entitled to receive. But whatever might be the authority of that vote, on the grounds on which its validity is questioned, we cannot put the construction upon it, that it directed the interest to be paid up to that time, in cash and on demand ; no such construction is warranted by its terms, or by any previous vote ; and we think it would be a forced and untenable one.

The court are therefore of opinion, that whether that vote was unauthorized and void, or valid and effectual for the purposes for which it was intended, it was not a vote giving a present debt to the stockholder, and a right to maintain an action to recover it, and therefore that this action cannot be maintained. *Judgment for the defendants.*